Filed 9/4/13  P. v. Morris CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>DARNELL MAURICE MORRIS,<br><br>     Defendants and Appellants. | B242115<br><br>(Los Angeles County<br>Super. Ct. No. BA369349) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Dennis J. Landin, Judge.  Affirmed.

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Darnell Maurice Morris (defendant) appeals from his conviction of two counts of kidnapping. He contends the admission of a 911 call, placed by an unidentified caller, resulted in a violation of his Sixth Amendment confrontation rights. We conclude the contention was not preserved for review, lacks merit and that defendant was not harmed by the statements. We affirm the judgment.

## BACKGROUND

**Procedural history**

Defendant and codefendant Will Brown (Brown) were charged in count 1 with kidnapping to commit rape in violation of Penal Code section 209, subdivision (b)(1),[1] and in count 2 with kidnapping in violation of section 207, subdivision (a).[2] In addition, the information alleged for purposes of the "Three Strikes" law (§§ 1170.12, subds. (a)-(d), 667, subd. (b)) and for purposes of section 667, subdivision (a)(1), that in 2007 defendant had suffered a prior conviction of attempted robbery. A jury found defendant guilty of both counts as charged. When the prosecution did not proceed on the prior conviction allegation, it was dismissed by the trial court.

On June 13, 2012, the trial court sentenced defendant to life in prison on count 1. The court imposed and stayed the middle term of five years as to count 2. The court also imposed mandatory fines and fees and ordered defendant to provide a DNA sample and fingerprint impressions. Defendant was given custody credit of 937 days, which was comprised of 815 actual days of custody and 122 days of conduct credit. Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

Daisy C. (Daisy) went out with friends during the evening and early morning hours of March 20, 2010. Afterward, as she was walking alone toward her cousin's house, a white four-door car stopped near her and a man who was a stranger to her

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

[2]     Brown was tried separately and is not a party to this appeal.

2

emerged from the passenger side. At trial, Daisy identified a photograph of Brown as the passenger. When Daisy saw Brown coming toward her she turned and ran in the opposite direction. Brown caught up to her and grabbed her by her coat. Daisy wriggled out of the coat and continued running, but Brown caught up again when she fell. He pinned her to the ground while she struggled and screamed. The white car then arrived at their location. Daisy injured her wrist and suffered scrapes from her fall and the struggle on the sidewalk.

Daisy identified defendant as the driver of the white car. Defendant took Daisy by the shoulders while Brown held her legs, and the two men forced her into the back seat of the car, causing more scratches on her shoulders. Daisy fought and kicked at them and held her foot outside the car in an attempt to keep defendant from closing it, but he closed the door on her foot, injuring her ankle.[3] Once Daisy was inside the car on her back, Brown straddled her, exposed his penis and moved it toward her face. Daisy turned her head and said what she thought might appeal to the men's compassion, and begged defendant, "Please, please, please, just get him off of me. I'll do anything. Just get him off of me." Defendant told Brown to stop, which he did.

Defendant then drove to a house with an apartment above the garage. Daisy's scrapes were bleeding and she was in severe pain. While still in the car, she asked to be released to seek medical attention. When defendant refused she asked for peroxide. Defendant responded that he had some upstairs. Daisy agreed to go on condition that defendant keep Brown away from her. Once upstairs, when no peroxide was found, Daisy undertook a stalling strategy of complaining, whining, and crying.

Meanwhile, a neighbor called 911 and told the operator he or she had seen a man with a young woman who appeared to be abused and was begging and pleading. The neighbor gave the address, but refused to identify himself or herself. Los Angeles Police

---

[3]     Yolanda Pinelo (Pinelo), a resident of the neighborhood, testified she heard Daisy's screams, looked out her window, and saw Daisy resisting as the men were forcing her into the car. She did not call the police or summon help.

Officers Rosales and his partner Silva were dispatched to the address and knocked on the apartment door. Defendant answered, told them everything was fine and the only other person there was "my girl." After investigating the officers found Daisy sitting on the bedroom floor crying. The officers then took defendant and Brown into custody and secured Daisy.

The defense presented no testimony or other evidence at trial.

## DISCUSSION

Defendant contends that the neighbor's 911 call should have been excluded as its admission violated the confrontation clause of the Sixth Amendment to the United States Constitution because the prosecution failed to either identify or produce the caller for cross-examination. The Sixth Amendment bars the "admission of testimonial statements of a [declarant] who [does] not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54, 68 (*Crawford*).)

Respondent claims because defendant failed to raise a confrontation clause objection in the trial court, he has forfeited the issue on appeal. (See *People v. Redd* (2010) 48 Cal.4th 691, 730 (*Redd*).) At trial, defendant objected to the 911 recording as irrelevant and lacking a proper foundation. A relevance objection does not preserve any constitutional claim (*People v. Raley* (1992) 2 Cal.4th 870, 892), although a defendant may argue on appeal that a consequence of the erroneous overruling of an evidentiary objection was a denial of due process. (*People v. Partida* (2005) 37 Cal.4th 428, 435-437.) In addition, a hearsay objection does not preserve a confrontation clause claim. (*Redd, supra*, at pp. 730-731.)[4]

---

[4] Although defense counsel made no specific hearsay objection, he argued against the prosecutor's claim that the recording was admissible under the "excited utterance" exception to the hearsay rule. (See Evid. Code, § 1240 [spontaneous statement].) Defense counsel also objected to the admission of the recording under the mistaken belief that the 911 caller was known to the prosecution but had not been identified to the defense.

4

In reply to respondent, defendant cites authority for the proposition that when an objection is sufficient to alert the trial court to an issue it is not forfeited on appeal. (See *People v. Clark* (1992) 3 Cal.4th 41, 124.) Defendant also invokes the rule if "'it appears that . . . the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply, but merely assert that the trial court's act or omission, insofar as wrong for the reasons actually presented to that court, had the additional *legal consequence* of violating the Constitution. . . .'" (*People v. Brady* (2010) 50 Cal.4th 547, 557, fn. 4.) Although defendant cites these principles, he makes no effort to demonstrate how a "no foundation" objection sufficiently alerted the trial court to a confrontation clause issue, or how overruling the objection had the additional consequence of violating the confrontation clause. Finally, defendant makes no effort to refer to the facts and circumstances in the record to demonstrate that "the new arguments do not invoke facts or legal standards different from those the trial court itself was asked to apply." (*Ibid.*)

Moreover, regardless of whether defendant preserved a *Crawford* issue with a proper objection, his legal argument on appeal is wholly inadequate. The confrontation clause is not implicated by statements that are not testimonial. (*Crawford*, *supra*, 541 U.S. at p. 59, fn. 9.) By citing the comment in *Crawford* that the court would leave for another day the definition of "testimonial" defendant suggests that courts have not reached that issue in relation to 911 calls. Further, defendant asserts: "There is currently a great deal of disagreement as to whether witness statements during 911 calls are testimonial." To support this assertion, defendant cites mostly sister-state cases and no case published after 2005.

In fact, as respondent observes, the United States Supreme Court since *Crawford* has further defined "testimonial" in the context of statements made to police during ongoing emergencies. (See *Michigan v. Bryant* (2011) __ U.S. __ [131 S.Ct. 1143] (*Bryant*); *Davis v. Washington* (2006) 547 U.S. 813 (*Davis*).) Also, defendant fails to cite the several California authorities decided after *Davis* which have found 911 calls to be nontestimonial without any discernible disagreement. (See, e.g., *People v. Gann*

5

(2011) 193 Cal.App.4th 994, 1008-1009; *People v. Nelson* (2010) 190 Cal.App.4th 1453, 1464; *People v. Johnson* (2010) 189 Cal.App.4th 1216, 1225-1226 (*Johnson*); *People v. Banos* (2009) 178 Cal.App.4th 483, 492-493; *People v. Brenn* (2007) 152 Cal.App.4th 166, 175-176.)

In *Crawford*, the Supreme Court described the most obvious form of testimonial hearsay, including formal testimony and statements resembling testimony, such as responses to police interrogation undertaken to obtain evidence to be used at trial. (*Crawford*, *supra*, 541 U.S. at pp. 51-52.) Later, the court tried "to determine more precisely which police interrogations produce testimony" in the context of 911 calls. (*Davis*, *supra*, 547 U.S. at p. 822.) The court held that when viewed objectively, if a reasonable listener would recognize that the caller was facing an ongoing emergency, not simply relating past events, and the statements elicited were necessary to enable the police to resolve that emergency, the statements are nontestimonial. (*Id.* at pp. 822, 827-828; see *People v. Cage* (2007) 40 Cal.4th 965, 984.) Determining whether an emergency is "ongoing" requires a "highly context-dependent inquiry." (*Bryant*, *supra*, 131 S.Ct. at p. 1158; see also *People v. Blacksher* (2011) 52 Cal.4th 769, 814 [live interview].)

In his reply brief, defendant narrowly construes *Davis* as generally excluding any statements regarding a past event in determining whether an emergency is ongoing. Although the caller spoke of the events in the present tense, defendant contends that the following excerpts of the 911 call show only past events:

"Caller: Uh, I don't want to appear to be nosey . . . but it sounds like a neighbor upstairs just got in with . . . somebody in a white Cadillac . . . .

"[¶] . . . [¶]

"Caller: They went in the house, but outside it sounds like she was being abused and beat-up and she was begging and pleading.

"Operator: What's the address?

"Caller: The address is . . . 24th Street . . . .

"[¶] . . . [¶]

6

"Operator:  Do you know what um, what the person [who] you saw him with looks like?  Male or female?

"Caller:  Uh, she's female black, young . . . .

"[¶] . . . [¶]

"Operator:  And do you know . . . for a fact she's being assaulted[?]

"Caller:  I can't tell, . . . it sounds that way to me . . . ."

In *Bryant*, the Supreme Court warned against employing an unduly narrow understanding of the term "ongoing emergency." (*Bryant*, *supra*, 131 S.Ct. at pp. 1156.) An emergency may be ongoing, for example, even if the police have secured the victim but the perpetrator's location is unknown. (*Ibid.*)  Thus, regardless of whether the caller is still perceiving the events, statements made in a 911 call "'are nontestimonial if the primary purpose is to deal with a contemporaneous emergency such as assessing the situation, dealing with threats, or apprehending a perpetrator.  [Citations.]'  [Citation.]" (*Johnson, supra*, 189 Cal.App.4th at pp. 1224-1225, quoting *People v. Romero* (2008) 44 Cal.4th 386, 422.)  "[A] 911 call made during the course of an emergency situation is ordinarily made for the primary nontestimonial purpose of alerting the police about the situation and to provide information germane to dealing with the emergency." (*People v. Gann, supra*, 193 Cal.App.4th at p. 1008.)  The caller's statements become testimonial only if the primary purpose of eliciting them was to produce evidence for possible use at a criminal trial. (*Johnson, supra*, at p. 1225; see *People v. Blacksher, supra*, 52 Cal.4th at pp. 814-815.)

In this case, the caller saw the victim, heard her screaming and begging before she went into the apartment.  The caller was not sure a crime had been committed.  At the time of the call the victim was not secure and the perpetrators had not been apprehended. Given this factual context, even if we assume that the caller was describing events that were no longer within his or her vision, it is inescapable that any reasonable person listening to the call would conclude the statements elicited were not simply about past events, but necessary to enable the police to determine whether there was an ongoing

emergency, and then to resolve the problem.  (See *Davis, supra*, 547 U.S. at pp. 822, 827-828.)

Even if defendant had preserved the issue and the statements in the 911 call were testimonial, we would find the admission of the statements harmless error, beyond a reasonable doubt.  Defendant cites the following hearsay statements:  "They went in the house, but outside it sounds like she was being abused and beat-up and she was begging and pleading"; and "it sounds [that she is being assaulted] to me."  Such statements were cumulative of Daisy's detailed testimony of her ordeal during which she described being assaulted and abused, while attempting to escape.

Defendant complains that the statements in the 911 call were not harmless because the prosecutor referred to them to bolster Daisy's credibility.  There is no suggestion in the record that without the 911 call, Daisy's credibility would have been at issue.  If so, Daisy's testimony was amply bolstered by Pinelo's testimony that she heard Daisy's screams and saw defendant and Brown force Daisy into the car.  Further, defendant displayed a consciousness of guilt when he lied to Office Rosales, claiming that the only other person in his apartment was his "girl" and that everything was fine.  Without the 911 call the remaining evidence was overwhelming, and the prosecution's case would still have been compelling.  We conclude "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  (*Chapman v. California* (1967) 386 U.S. 18, 24; see also *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680 [confrontation error].)

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:

_____, P. J.      _____, J.
BOREN                              ASHMANN-GERST